IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERGIO ALVAREZ,

  Plaintiff,

v.

ROBERT HOREL, et al.,

  Defendants.

No. C 06-5631 SBA (PR)

**ORDER OF SERVICE AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

(Docket no. 8)

## INTRODUCTION

Plaintiff Sergio Alvarez, a state prisoner currently incarcerated at Pelican Bay State Prison, has filed a pro se civil rights complaint under 42 U.S.C. § 1983. Plaintiff has been granted in forma pauperis status.

Venue is proper in this Court because the acts complained of occurred in Del Norte County, which is located within the Northern District of California. See 28 U.S.C. §§ 84(a), 1391(b).

## BACKGROUND

The following facts are derived from the allegations in Plaintiff's complaint, which are taken as true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review of the complaint. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

On February 5, 1997, the Santa Cruz County Superior Court imposed a sentence of twenty-four years to life in state prison, "which Plaintiff has since sought to challenge from prison."[1] (Compl. at 5.) On January 22, 2004, Plaintiff was "found guilty in the Del Norte County Superior Court based upon a guilty plea which he attempted to withdraw during the sentencing hearing but was not able due to his lack of ability to articulate himself in English and no knowledge of U.S. law." (Id. at 9.)

Plaintiff is a "foreign (Mexican) national." (Id. at 6.) His "primary language" is "a dialect of

---

[1] The Court notes that Plaintiff has previously filed a federal habeas action challenging his 1997 conviction; however, that action was dismissed as untimely on March 17, 2009. (Mar. 17, 2009 Order in Case no. C 06-4938 SBA (pr) at 12.)

1 Nahuatl (a pre Columbian language)." (Id.) He claims that he "cannot communicate well in English
2 because Spanish and English are his second and third languages." (Id.) He claims that "[o]n many
3 occasions throughout his incarceration at PBSP he has had to depend solely on legal and translating
4 assistance from other prisoners because he does not understand or articulate himself well in
5 English . . . ." (Id.)

6       Plaintiff makes two separate claims in his complaint. First, Plaintiff alleges that he "has on
7 several occasions sought to have admittedly erroneous and prejudicial information expunged from
8 his prison central file (c-file) and each time Defendants have arbitrarily, capriciously failed to
9 remove said false information." (Id. at 4.) Specifically, Plaintiff claims that on June 12, 2004, he
10 conducted a review of his prison file and discovered that PBSP Institutional Teacher Corrine Perry
11 issued a CDC-128B informational chrono dated May 12, 2004 alleging "incorrect/false information
12 regarding Plaintiff having a GED certificate." (Id. at 6; Compl., Ex. 7.) In June of 2004, Plaintiff
13 filed a 602 appeal requesting "(1) that the CDC 128B Chrono dated 5/12/04 be expunged from [his]
14 c-file; (2) that a chrono be issued stating that [he] ha[d] no such GED or high school diploma; (3)
15 that [he] be provided with . . . any information by which Mrs. Perry determined that [he] ha[d] a
16 GED diploma." (Compl., Ex. 8.) On July 13, 2004, the appeal was granted in part as to (1) and
17 denied in part as to (2) and (3) at the informal level of review. (Id.) However, Plaintiff alleges
18 "Defendants have repeatedly failed to remove the papers containing false information and arbitrarily
19 have used and continue to use the information for purposes of decision making." (Compl. at 4.)
20

21       Plaintiff also alleges that "Defendants have denied plaintiff meaningful access to the courts."
22 (Id. at 1-2.) He claims that "prison procedures and practices governing Plaintiff's access to SHU law
23 library services and related legal assistance service program are enforced arbitrarily and capriciously
24 and are designed to inhibit and impede/interfere with prisoners." (Id. at 15.) He claims that he has
25 "on several occasions attempted to prepare legal papers for filing within the courts by requesting
26 legal assistance from other prisoners via the established PBSP legal assistance program or other
27 related services." (Id.) Specifically, Plaintiff claims that on December 14, 2004, he "attempted to
28 utilize such services by making a 'new request' for legal/translating assistance from inmate Vivero

who speaks Plaintiff's native language and is familiar with some of his legal issues." (<u>Id.</u> at 10.) On December 17, 2004, PBSP Correctional Officer T. Dennis denied Plaintiff's request claiming he already received 10 days assistance from another inmate (Ayala) on 11/8/04 thru [sic] 11/23/04 and Plaintiff could receive further assistance only if there was a verified court deadline." (<u>Id.</u>) On the same date he received the denial of his request, Plaintiff filed a 602 grievance form regarding these allegations; on the form, he claimed that he had been denied "a request for legal assistance in preparing a petition for habeas corpus, a civil rights complaint 1983, as well as to receive help in ongoing case[s]." (Compl., Ex. 17.) On December 28, 2004, Officer Dennis, who also handled the appeal at the informal level of review, denied Plaintiff's appeal on two grounds: first, Plaintiff had already received legal assistance "from 11-8-04 to 11-23-04 with i/m Vivero[2] . . . but [Plaintiff] failed to provide a verifiable deadline which allows an additional ten day extension;" and second, Plaintiff was disqualified from inmate legal assistance because he was being represented by an attorney.[3] (Compl., Ex. 18.)

      Plaintiff then appealed the denial to the first formal level of review. PBSP Correctional Sergeant D. Skerik was assigned to review Plaintiff's appeal by the First Level Reviewer. Sergeant Skerik interviewed Plaintiff on January 31, 2005. During the interview, Plaintiff "stated that the Appeals Office removed several attachments to this appeal," and that he "wanted those attachments to be returned to, and made a permanent part of, this appeal." (Compl., Ex. 20.) PBSP Facility Captain S. C. Wheeler and Associate Warden L. Williams denied the appeal at the first formal level on February 1, 2005 and February 2, 2005, respectively. (<u>Id.</u>) According to the First Level Supplemental Page, "a check of [Plaintiff's] records in the Law Library was conducted." (<u>Id.</u>) It further states that prior to Plaintiff's request for inmate assistance from Inmate Vivero, "it was discovered that [Plaintiff] had applied for and received legal assistance on one of [his] court cases

---

    [2] The record is unclear about whether the inmate who assisted Plaintiff from "11-8-04 to 11-23-04" was inmate Ayala, as mentioned in the complaint, or inmate Vivero, as mentioned in Exhibit 18. Nevertheless, the Court need not clarify this fact at this time.

    [3] Based on the record, it appears that Officer Dennis denied Plaintiff legal assistance on the basis that he was represented by an attorney in one case, "case no. HCPB03-5263." (Compl. Ex. 18.) However, Plaintiff's complaint challenges the denial of legal assistance on a different case, Del Norte County Superior Court case number HCPB06-5033. (Compl. at 14, Ex. 31.)

3

from inmate Ayala . . . ." (Id.) Plaintiff's first formal level appeal was denied because as of the date of the appeal response, Plaintiff had failed "to provide a verifiable court deadline," which would justify his request for legal assistance form Inmate Vivero. (Id.) The second formal level review decision was drafted by PBSP Warden Richard J. Kirkland, who "partially granted" Plaintiff's request to receive legal assistance from Inmate Vivero provided that "any requests for legal assistance will be reviewed and approved or disapproved based on the established policies and procedures. (Compl., Ex. 22.) However, Plaintiff's "request that changes be made to the PBSP Law Library program to ensure an adequate and meaningful Law Library program" was denied at the second level. (Id.) Plaintiff alleges that he exhausted his appeal through to the Director's Level Review.[4] He also alleges that: "On approximately April 24, 2006, because plaintiff was unable to prepare an adequate or timely petition, the Superior Court County of Del Norte denied his petition for writ of habeas corpus to withdraw a guilty plea that resulted in a two-year prison sentence." (Compl. at 14.) The superior court denied the petition filed in the Del Norte County Superior Court Case No. HCPB06-5033 upon finding that "insufficient grounds have been established to grant relief in this case" and that "petitioner's claims were not timely made."[5] (Compl., Ex. 31.)

Plaintiff names the following Defendants: PBSP Warden Bob Horel, PBSP Institutional Teacher Corinne Perry, PBSP Institutional Correctional Counselor D. Marvin, PBSP Correctional Counselor B. Flowers, PBSP Correctional Officer T. Dennis, PBSP Correctional Sargent D. Skerik, PBSP Correctional Captain S. C. Wheeler, Former PBSP Warden Richard Kirkland, PBSP Employee M. Costella, Chief of Inmate Appeals Nancy Grannis and "John Doe, whos [sic] unlegible [sic] signature appears on the CDC 602 appeal # C05-00084." (Compl. at 2-3.)

Plaintiff seeks a declaratory judgment, monetary damages, a ruling on the unconstitutionality

---

[4] On September 15, 2005, Nancy Grannis, Chief of the Inmate Appeals Branch, sent Plaintiff a letter indicating that his correspondence relating to his 602 appeal had been "forwarded to the Appeals Coordinator at your location for further review," but noting that Plaintiff should "receive further resolution" from the appeals office after October 15, 2005. (Compl., Ex. 24.) Plaintiff includes documentation that he never received any further resolution from the Inmate Appeals Branch, and his subsequent appeals were rejected as incomplete or untimely. (Compl., Ex. 25-28.)

[5] The record does not reflect when Plaintiff filed his superior court habeas petition in Del Norte County Superior Court Case No. HCPB06-5033.

4

of PBSP's library policies, a jury trial, and appointment of counsel.  (Id. at 18-19.).

**DISCUSSION**

**I.      Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b)(1), (2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Terracom v. Valley National Bank, 49 F.3d 555, 558 (9th Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

**II.     Legal Claims**

**A.      False Information in Central File**

Plaintiff's claim of false information being placed in his central file is not actionable. First, the Court finds that Plaintiff has failed to sufficiently allege that he has exhausted this claim. The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  Wyatt v. Terhune, 315 F.3d 1108, 1117 n.9 (9th Cir.), cert. denied, 124 S. Ct. 50 (2003).  While nonexhaustion under § 1997e(a) is an affirmative defense, a prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies.  Id. at 119-20.  Accordingly, the court may

5

dismiss a claim without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies. See id.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. See id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. See id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). See id. at 1237-38.

With respect to Plaintiff's false information claim, it appears that he never exhausted his administrative remedies. Plaintiff attaches copies of a prison grievance regarding his false information claim and an informal level grant in response to this grievance, but he failed to appeal this decision to any subsequent levels of appeal, once he suspected that the problem persisted. Claims must be exhausted before they are raised in a federal civil rights action; otherwise, they must be dismissed. 42 U.S.C. § 1997e(a); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Nothing in the body of his complaint or in his exhibits demonstrates that prison officials prevented him from exhausting his claim.

Second, even if Plaintiff had exhausted this claim, or exhausts it in the future, the claim does not concern a violation of a right secured by the Constitution or laws of the United States. See West, 487 U.S. at 48. Because California has created regulations from which a protected interest in accurate personal information records could arise, a court must ask (1) whether the regulations creating the right to accurate personal information records narrowly restrict the power of prison officials to deprive inmates of accurate records, and (2) whether the deprivation suffered due to the denial of accurate records is one of "real substance." See Sandin, 515 U.S. at 477-87.

California Code of Regulations title 15, section 3450 allows inmates to inspect personal records and to request amendment to correct outdated, inaccurate or incomplete information. If a request to correct information is denied, the inmate may have a statement of disagreement placed in the record or file. See id. § 3450(c). These regulations do not contain substantive predicates or mandatory language requiring any specific outcome when a determination on a request to amend personal information in a prisoner's file is made. The regulations state no criteria, for example, which must be found before an inmate's request will be granted or denied. A provision that merely provides procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-62 (1989); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993). Because the statutory language does not meet the first prong of the Sandin test, no protected liberty interest requiring constitutional protection is created. Therefore, Plaintiff's claim against Defendants Perry, Marvin, and Flowers is DISMISSED with prejudice for failure to exhaust and for failure to identify a federal constitutional claim.

### B. Meaningful Access to the Courts

Plaintiff's claim of denial of access to the courts is actionable as stated against Defendant Dennis. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. See Lewis, 518 U.S. at 350-55. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. See id. at 354-55.

In some instances, a law library or other program may not be sufficient for some of the prisoners because of their special situations (e.g., illiteracy or inability to communicate in English). See id. at 356. The right of access to the court is limited to the initiation of a court action. The state is not required to enable the prisoner to discover grievances or to litigate effectively once in court.

See id. at 354. Nonetheless, prisoners may not be barred from receiving legal assistance from other prisoners unless they are provided with a reasonable alternative to such assistance. See Johnson v. Avery, 393 U.S. 483, 490 (1969); Storseth v. Spellman, 654 F.2d 1349, 1352 (9th Cir. 1981). The state may, however, reasonably regulate the time when, and the place where, prisoner legal assistance is dispensed. See Johnson, 393 U.S. at 490; see, e.g., Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984) (requiring that prisoners meet with jailhouse lawyer in law library), cert. denied, 469 U.S. 845 (1984); Corpus v. Estelle, 409 F. Supp. 1090 (S.D. Tex. 1975) (confining activities of jailhouse lawyers to specified writ room during set hours), aff'd, 551 F.2d 68 (5th Cir. 1977). But the restrictions must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Limitations may not be imposed arbitrarily or without reason. See Bradley v. Hall, 64 F.3d 1276, 1281-82 (9th Cir. 1995) (finding under Turner that prison "disrespect rule" as applied to prisoner was not reasonably related to legitimate penological interests and therefore impermissibly burdened his ability to file grievances).

Once he identifies the inadequacy in a legal access program, the plaintiff must demonstrate that the alleged shortcomings in the program hindered his efforts to pursue a legal claim. See Lewis, 518 U.S. at 351. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the library that he was unable even to file a complaint. See id. Mere delay in filing papers would not be enough, for example, if they were nevertheless timely filed or accepted and considered by the court. See Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir. 1982). However, the arbitrary denial by prison officials of access to materials the prison routinely made available to inmates for the preparation of legal documents constitutes a denial of an inmate's right of access to the courts where it results in the loss of a legal claim. Phillips v. Hust, 477 F.3d 1070, 1073 (9th Cir. 2007).

Here, Plaintiff has stated a constitutional claim about denial of access to the courts, based on

8

1  the fact that he alleges that Defendant Dennis denied him access to the legal assistance program.
2  See Johnson, 393 U.S. at 490; Storseth, 654 F.2d at 1352. Plaintiff has further alleged that he
3  suffered an actual injury based on this lack of access to the courts: his state habeas petition was
4  denied as untimely in April, 2006. See Lewis, 518 U.S. at 351; Phillips, 477 F.3d at 1073. Although
5  Plaintiff alleges he also needed help in "ongoing case[s]," including a "a civil rights complaint
6  1983," (Compl., Ex. 17), he does not allege any other specific injuries incurred due to Defendant
7  Dennis denying him access to legal assistance.

Plaintiff has therefore stated a COGNIZABLE claim for a violation of his right of access to the courts -- based on the specific injury of his state habeas petition being denied as untimely.

### C. Claim Relating to Grievance Process

Plaintiff also names Defendants Perry, Grannis, Kirkland, Wheeler, Skerik, and Costella, who all took part in handling the 602 appeal relating to his claim of a denial of access to the courts. By the time these Defendants were involved in handling Plaintiff's 602 appeal, any constitutional violation -- presumably of his right of access to the courts -- was complete, so their actions did not violate that right. Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action. See Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) ("Prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance."). Thus, the aforementioned Defendants' failure to uphold Plaintiff's grievance, and any possible misrepresentation regarding the cause of the problem, was not a constitutional violation. Plaintiff has therefore failed to state a claim against Defendants Perry, Grannis, Kirkland, Wheeler, Skerik, and Costella. Accordingly, Plaintiff's claim relating to the grievance process against Defendants Perry, Grannis, Kirkland, Wheeler, Skerik, and Costella is DISMISSED with prejudice.

### D. Claim Against Doe Defendant

Plaintiff identifies Defendant "John Doe," who signed the second level response of Plaintiff's administrative appeal No. C05-00084, as a Doe Defendant whose name he intends to learn through discovery. The use of Doe Defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti,

**United States District Court**
For the Northern District of California

629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

Accordingly, Plaintiff's claim against Defendant "John Doe" is DISMISSED from this action without prejudice. Should Plaintiff learn that Defendant's identity he may move to file an amendment to the complaint to add him as a named defendant. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003). Plaintiff is again cautioned that there is no right to a response or any particular action. See Flick, 932 F.2d at 728. Therefore, even if Plaintiff discovers the name of "John Doe," merely alleging that he signed the second level response of Plaintiff's administrative appeal No. C05-00084 is insufficient to state a cognizable claim for relief. See id.

### E.  Supervisory Liability Claim

Finally, Plaintiff names PBSP Warden Bob Horel as a Defendant in this action. Plaintiff does not allege facts demonstrating that Defendant Horel violated his federal rights, but seems to claim Defendant Horel is liable based on the conduct of his subordinate, Defendant Dennis. There is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id.  A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

Plaintiff's claim against Defendant Horel is DISMISSED with leave to amend. Plaintiff may file an amendment to the complaint alleges supervisory liability under the standards explained above.

## III.  Pending Motions

### A.  Motion for a Temporary Restraining Order and Preliminary Injunction

Plaintiff's has filed a "Motion for a Temporary Restraining Order [TRO] and Preliminary Injunction," alleging that he has not been afforded access to a translator during his classification hearings in 2005 and 2007 (docket no. 8). He asks the Court to issue a TRO:

> [T]o ensure that Defendants stop relying upon, generating and/or fabricating false or erroneous information regarding my education . . . and to ensure that I be afforded all due process protections and meaningful access to the courts when being subjected by defendants to disciplinary charges and when taken before ICC Boards.

(Decl. in Support of Mot. for TRO at 1.)

First, the Court notes that the basis for this motion is not at issue in the instant action. The Court also notes that the alleged constitutional violation during his 2007 classification hearing took place well after the filing of this action. See Manning v. City of Auburn, 953 F.2d 1355, 1359-60 (11th Cir. 1992) (supplemental pleadings setting forth occurrences or events which happened after the date of the original complaint are optional; claims not filed in a supplemental complaint may be filed in a separate lawsuit). Moreover, Plaintiff cannot obtain a TRO or preliminary injunction without first satisfying the notice requirements of Federal Rule of Civil Procedure 65. Prior to granting a preliminary injunction, notice to the adverse party is required. Fed. R. Civ. P. 65(a)(1). A motion for preliminary injunction therefore cannot be decided until the parties to the action are served, and they have not yet been served here. See Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983). A TRO may be granted without written or oral notice to the adverse party or that party's attorney if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant's attorney (plaintiff himself in this case, as he proceeds pro se) certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. Fed. R. Civ. P. 65(b). Plaintiff has not satisfied both requirements.

Accordingly, Plaintiff's motion (docket no. 8) is DENIED.

### B.   Motion for Appointment of Counsel

Plaintiff also requests the Court to appoint counsel to assist him in this action. The Court is

11

unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a <u>pro bono</u> appointment. The proceedings are at an early stage and it is premature for the Court to determine Plaintiff's likelihood of success on the merits. Moreover, Plaintiff has been able to articulate his claims adequately <u>pro se</u> in light of the complexity of the issues involved. <u>See</u> <u>Agyeman v. Corrections Corp. of America</u>, 390 F.3d 1101, 1103 (9th Cir. 2004). Accordingly, the request for appointment of counsel at this time is DENIED. This does not mean, however, that the Court will not consider appointment of counsel at a later juncture in the proceedings, that is, after Defendant has filed a dispositive motion and the Court has a better understanding of the procedural and substantive matters at issue. Therefore, Plaintiff may file a renewed motion for the appointment of counsel after Defendant's dispositive motion has been filed. If the Court decides that appointment of counsel is warranted at that time, then it can seek volunteer counsel to agree to represent Plaintiff <u>pro bono</u>.

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.      Plaintiff's false information claim against Defendants Perry, Marvin, and Flowers is DISMISSED with prejudice.

2.      Plaintiff has stated a COGNIZABLE claim for a violation of his right of access to the courts against Defendant Dennis.

3.      Plaintiff's claim relating to the grievance process against Defendants Perry, Grannis, Kirkland, Wheeler, Skerik, and Costella is DISMISSED with prejudice.

4.      Plaintiff's claim against Defendant "John Doe" is DISMISSED from this action without prejudice.

5.      Plaintiff's supervisory liability claim against Defendant Horel is DISMISSED with leave to amend. Within **thirty (30) days** of the date of this Order Plaintiff may file an amended supervisory liability claim against Defendant Horel as set forth above in Section II(E) of this Order. (Plaintiff shall resubmit only that claim and not the entire complaint.) The failure to do so will result

in the dismissal without prejudice of the supervisory liability claim against Defendant Horel.

6.     Good cause appearing, the United States Marshal is hereby ORDERED to attempt to effect personal service upon **Correctional Officer T. Dennis at PBSP**.  The United States Marshal shall serve Defendant Dennis "personally" or serve an agent of Defendant "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).

The Clerk shall provide the United States Marshal with the necessary summons and copies of:  (1) the complaint (docket no. 1) as well as copies of all attachments thereto; and (2) a copy of this Order.  The United States Marshal shall attempt personal service within **fourteen (14) days** of the date of this Order.

The Clerk shall also mail copies of these documents to the Attorney General of the State of California.  Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

7.     The case has been pending for almost three years and there is no reason for further delay. In order to expedite the resolution of this case, the Court orders as follows:

a.     Defendant shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  In addition, no later than **thirty (30) days** from the date their answer is due, Defendant shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date his summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

b.     Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **thirty (30) days** after the date on which Defendant's motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendant has made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendant], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendant's declarations, Defendant's version may be taken as true and the case may be decided in Defendant's favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c.     If Defendant wishes to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

      d.     The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

8.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendant to depose Plaintiff and any other necessary witnesses confined in prison.

In order to maintain the aforementioned briefing schedule, all discovery requests must be served on the opposing party on or by **July 1, 2009** and all discovery responses must be served on or by **August 2, 2009**. In the event that Defendant files a motion for summary judgment, Plaintiff shall file his opposition to the motion for summary judgment even if he intends to file a motion to compel discovery. The discovery motion shall be submitted together with Plaintiff's opposition to the motion for summary judgment, and Defendant's response to the discovery motion shall be submitted on or by the date their reply to Plaintiff's opposition is due. If the Court decides any filed discovery motion in Plaintiff's favor, he will be granted the opportunity to file a supplemental opposition to the motion for summary judgment.

9.   All communications by Plaintiff with the Court must be served on Defendant, or his counsel once counsel has been designated, by mailing a true copy of the document to Defendant or his counsel.

10.   It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

11.   **No further extensions of time will be granted in this case absent exigent circumstances**. If exigent circumstances exist, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

12.   Plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction" is

1  DENIED (docket no. 8).
2      13.    Plaintiff's request for appointment of counsel is DENIED.
3      14.    This Order terminates Docket no. 8.
4  IT IS SO ORDERED.
5
6  DATED: 5/11/09

                            SAUNDRA BROWN ARMSTRONG
7                             United States District Judge

P:\PRO-SE\SBA\CR.06\Alverez5631.service.frm16

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SERGIO ALVAREZ,

        Plaintiff,

v.

ROBERT HOREL et al,

        Defendant.

Case Number: CV06-05631 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 14, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sergio Alvarez K42605
P.O. Box 7500
Crescent City, CA 95532-7500

Dated: May 14, 2009

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Alverez5631.service.frm17