UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO ALVAREZ,<br><br>        Plaintiff,<br><br>  v.<br><br>ROBERT HOREL, et al.,<br><br>        Defendants.<br>_____/ | No. C 06-5631 SBA (pr)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT, GRANTING HIS MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION, AND GRANTING DEFENDANT DENNIS'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(Docket nos. 19, 22, 24) |

## INTRODUCTION

Plaintiff Sergio Alvarez, a state prisoner currently incarcerated at Pelican Bay State Prison (PBSP), has filed a pro se civil rights complaint under 42 U.S.C. § 1983.

Before the Court are Plaintiff's motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(c) and his motion for leave to file a motion for reconsideration pursuant to Civil Local Rule 7-9. Defendant Dennis has not responded to either of Plaintiff's motions. Also before the Court is Defendant Dennis's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff has filed an opposition to Defendant Dennis's motion, and Defendant Dennis has filed a reply.

For the reasons discussed below, the Court DENIES Plaintiff's motion for leave to file an amended complaint, GRANTS Plaintiff's motion for leave to file a motion for reconsideration, and GRANTS Defendant Dennis's motion for judgment on the pleadings.

## BACKGROUND

### I.   Factual Background

The following factual background was taken from the May 11, 2009 Order of Service:

> On February 5, 1997, the Santa Cruz County Superior Court imposed a sentence of twenty-four years to life in state prison, "which Plaintiff has since sought to challenge from prison."[1] (Compl. at 5.) On January 22, 2004, Plaintiff was "found guilty in the Del Norte County Superior Court based upon a guilty plea which he attempted to withdraw during the sentencing hearing but was not able due

---

[1] The Court notes that Plaintiff has previously filed a federal habeas action challenging his 1997 conviction; however, that action was dismissed as untimely on March 17, 2009. (Mar. 17, 2009 Order in Case no. C 06-4938 SBA (pr) at 12.)

to his lack of ability to articulate himself in English and no knowledge of U.S. law." (Id. at 9.)

Plaintiff is a "foreign (Mexican) national." (Id. at 6.) His "primary language" is "a dialect of Nahuatl (a pre Columbian language)." (Id.) He claims that he "cannot communicate well in English because Spanish and English are his second and third languages." (Id.) He claims that "[o]n many occasions throughout his incarceration at PBSP he has had to depend solely on legal and translating assistance from other prisoners because he does not understand or articulate himself well in English . . . ."

(May 11, 2009 Order at 1-2 (footnote in original).)

Plaintiff made two separate claims in his complaint. First, he alleged that he "has on several occasions sought to have admittedly erroneous and prejudicial information expunged from his prison central file (c-file) and each time Defendants have arbitrarily, capriciously failed to remove said false information." (Comp. at 4.) Plaintiff alleged that despite contrary representations, "Defendants have repeatedly failed to remove the papers containing false information and arbitrarily have used and continue to use the information for purposes of decision making." (Id.)

Plaintiff also alleges that "Defendants have denied plaintiff meaningful access to the courts." (Id. at 1-2.) As taken from the May 11, 2009 Order of Service:

> [Plaintiff] claims that "prison procedures and practices governing Plaintiff's access to SHU law library services and related legal assistance service program are enforced arbitrarily and capriciously and are designed to inhibit and impede/interfere with prisoners." (Id. at 15.) He claims that he has "on several occasions attempted to prepare legal papers for filing within the courts by requesting legal assistance from other prisoners via the established PBSP legal assistance program or other related services." (Id.) Specifically, Plaintiff claims that on December 14, 2004, he "attempted to utilize such services by making a 'new request' for legal/translating assistance from inmate Vivero who speaks Plaintiff's native language and is familiar with some of his legal issues." (Id. at 10.) On December 17, 2004, PBSP Correctional Officer T. Dennis denied Plaintiff's request claiming he already received 10 days assistance from another inmate (Ayala) on 11/8/04 thru [sic] 11/23/04 and Plaintiff could receive further assistance only if there was a verified court deadline." (Id.) On the same date he received the denial of his request, Plaintiff filed a 602 grievance form regarding these allegations; on the form, he claimed that he had been denied "a request for legal assistance in preparing a petition for habeas corpus, a civil rights complaint 1983, as well as to receive help in ongoing case[s]." (Compl., Ex. 17.) On December 28, 2004, Officer Dennis, who also handled the appeal at the informal level of review, denied Plaintiff's appeal on two grounds: first, Plaintiff had already received legal assistance "from 11-8-04 to 11-23-04 with i/m Vivero[2] . . . but [Plaintiff] failed to provide a verifiable deadline which allows an additional ten day

---

[2] The record is unclear about whether the inmate who assisted Plaintiff from "11-8-04 to 11-23-04" was Inmate Ayala, as mentioned in the complaint, or Inmate Vivero, as mentioned in Exhibit 18. Nevertheless, the Court need not clarify this fact at this time.

2

extension;" and second, Plaintiff was disqualified from inmate legal assistance because he was being represented by an attorney.[3] (Compl., Ex. 18.)

Plaintiff then appealed the denial to the first formal level of review. PBSP Correctional Sergeant D. Skerik was assigned to review Plaintiff's appeal by the First Level Reviewer. Sergeant Skerik interviewed Plaintiff on January 31, 2005. During the interview, Plaintiff "stated that the Appeals Office removed several attachments to this appeal," and that he "wanted those attachments to be returned to, and made a permanent part of, this appeal." (Compl., Ex. 20.) PBSP Facility Captain S. C. Wheeler and Associate Warden L. Williams denied the appeal at the first formal level on February 1, 2005 and February 2, 2005, respectively. (Id.) According to the First Level Supplemental Page, "a check of [Plaintiff's] records in the Law Library was conducted." (Id.) It further states that prior to Plaintiff's request for inmate assistance from Inmate Vivero, "it was discovered that [Plaintiff] had applied for and received legal assistance on one of [his] court cases from inmate Ayala . . . ." (Id.) Plaintiff's first formal level appeal was denied because as of the date of the appeal response, Plaintiff had failed "to provide a verifiable court deadline," which would justify his request for legal assistance form Inmate Vivero. (Id.) The second formal level review decision was drafted by PBSP Warden Richard J. Kirkland, who "partially granted" Plaintiff's request to receive legal assistance from Inmate Vivero provided that "any requests for legal assistance will be reviewed and approved or disapproved based on the established policies and procedures. (Compl., Ex. 22.) However, Plaintiff's "request that changes be made to the PBSP Law Library program to ensure an adequate and meaningful Law Library program" was denied at the second level. (Id.) Plaintiff alleges that he exhausted his appeal through to the Director's Level Review.[4] He also alleges that: "On approximately April 24, 2006, because plaintiff was unable to prepare an adequate or timely petition, the Superior Court County of Del Norte denied his petition for writ of habeas corpus to withdraw a guilty plea that resulted in a two-year prison sentence." (Compl. at 14.) The superior court denied the petition filed in the Del Norte County Superior Court Case No. HCPB06-5033 upon finding that "insufficient grounds have been established to grant relief in this case" and that "petitioner's claims were not timely made."[5] (Compl., Ex. 31.)

(May 11, 2009 Order of Service at 2-4 (footnotes in original).)

Plaintiff named the following Defendants in his complaint: PBSP Warden Bob Horel, PBSP Institutional Teacher Corinne Perry, PBSP Institutional Correctional Counselor D. Marvin, PBSP

---

[3] Based on the record, it appears that Officer Dennis denied Plaintiff legal assistance on the basis that he was represented by an attorney in one case, "case no. HCPB03-5263." (Compl. Ex. 18.) However, Plaintiff's complaint challenges the denial of legal assistance on a different case, Del Norte County Superior Court case number HCPB06-5033. (Compl. at 14, Ex. 31.)

[4] On September 15, 2005, Nancy Grannis, Chief of the Inmate Appeals Branch, sent Plaintiff a letter indicating that his correspondence relating to his 602 appeal had been "forwarded to the Appeals Coordinator at your location for further review," but noting that Plaintiff should "receive further resolution" from the appeals office after October 15, 2005. (Compl., Ex. 24.) Plaintiff includes documentation that he never received any further resolution from the Inmate Appeals Branch, and his subsequent appeals were rejected as incomplete or untimely. (Compl., Ex. 25-28.)

[5] The record does not reflect when Plaintiff filed his superior court habeas petition in Del Norte County Superior Court Case No. HCPB06-5033.

Correctional Counselor B. Flowers, PBSP Correctional Officer T. Dennis, PBSP Correctional Sargent D. Skerik, PBSP Correctional Captain S. C. Wheeler, Former PBSP Warden Richard Kirkland, PBSP Employee M. Costella, Chief of Inmate Appeals Nancy Grannis and "John Doe, whos [sic] unlegible [sic] signature appears on the CDC 602 appeal # C05-00084."  (Compl. at 2-3.)

Plaintiff sought a declaratory judgment, monetary damages, a ruling on the unconstitutionality of PBSP's library policies, a jury trial, and appointment of counsel.  (Id. at 18-19.).

## II.     Procedural Background

On May 11, 2009, the Court found that the aforementioned factual allegations gave rise to a cognizable claim against Defendant Dennis for a violation of Plaintiff's right to access to the courts.  (May 11, 2009 Order at 12.)  Plaintiff's supervisory liability claim against Defendant Horel was dismissed with leave to amend.  (Id.)  The Court directed Plaintiff to amend his supervisory liability claim by June 10, 2009, and informed him that the failure to do so would result in the dismissal of the claim without prejudice.  (Id.)  The Court found that Plaintiff's claim against "John Doe" was dismissed without prejudice.  (Id.)  All other claims were dismissed with prejudice.  (Id.)

Thereafter, Plaintiff filed his amendment to the complaint.  In the amendment, Plaintiff stated that he was amending his supervisory liability claim to "reflect the actions of Defendants Kirkland, Horel and Jacquez."  (Am. to Compl. at 1.)  Plaintiff clarified that Defendant Kirkland, who "has since been replaced by Robert Horel and then Francisco Jacquez," was warden of PBSP during the time-period that the allegations took place, and "was responsible for the administration of PBSP and for implementing institutional policies [and] procedures including law library services and for reviewing all administrative appeals filed by PBSP inmates."  (Id. at 2.)

On June 29, 2009, Defendant Dennis filed an answer to the complaint and a demand for jury trial.

On July 27, 2009, the Court dismissed without leave to amend Plaintiff's supervisory liability claim.  (July 27, 2009 Order at 4.)  The Court found that any claim against Defendants Kirkland, Horel, or Jacquez relating to the deficiencies of the legal assistance program should be raised in a new civil rights action.  (Id.)  The Court noted:

4

> Plaintiff's allegations in his complaint dealt with his lack of access to the legal assistance program after Defendant Dennis denied his request to receive legal assistance from Inmate Vivero.  Plaintiff now seems to be challenging the program itself due to its 'many deficiencies;' however, such allegations are not related to his original denial of access to the court claim.

(July 27, 2009 Order at 3, n. 1.)

On July 29, 2009, Defendant Dennis filed a Motion for Judgment on the Pleadings (docket no. 19), arguing that the state court rejected Plaintiff's habeas claims on the merits and that therefore the untimeliness of his petition was not the cause of his alleged injury.  (Mot. for J. Pleadings at 2.) Additionally, Defendant Dennis argues that "the link between [his] action and the state court's denial of the habeas petition is too tenuous to establish proximate causation."  (Id.)

On August 14, 2009, Plaintiff filed a Motion for Leave to File a Motion for Reconsideration (docket no. 22) of the Court's Order dismissing Plaintiff's supervisory liability claim.  Plaintiff argues that the Court overlooked "material facts and controlling decisions . . . as to the allegations that Defendant Kirkland implemented and enforced an unconstitutional legal assistance policy/program with many deficiencies, in connection with Plaintiffs [sic] original denial of access to the court claims . . . ."  (Mot. for Leave to File Mot. for Recons. at 6.)

 On September 2, 2009, Plaintiff filed his opposition to Defendant Dennis's Motion for Judgment on the Pleadings.  On that same date, Plaintiff filed a motion for leave to amend his complaint (docket no. 24) and attached a copy of his amended complaint.

Defendant Dennis filed a reply to Plaintiff's opposition on September 16, 2009.

## DISCUSSION

### I. Plaintiff's Motion for Leave to File an Amended Complaint

A plaintiff may amend his complaint once as a matter of course at any time before a responsive pleading is served.  See Fed. R. Civ. P. 15(a).  Where plaintiff seeks to amend after a responsive pleading has already been served, however, the decision whether to grant leave to amend is committed to the sound discretion of the trial court.  Waits v. Weller, 653 F.2d 1288, 1290 (9th Cir. 1981).  It lies within the district court's discretion whether a plaintiff may expand his complaint by adding claims raised for the first time on summary judgment.  See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding that plaintiff

5

waived new § 1983 arguments raised for the first time in his motion for summary judgment where nothing in the counts in the amended complaint suggested he was raising those arguments and he offered no excuse or justification for his failure to raise them earlier).

Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of amendments and, in general, leave shall be freely given when justice so requires. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994); cf. id. (attempt to amend complaint requiring amendment of scheduling order under Fed. R. Civ. P. 16 must be based upon good cause). Leave need not be granted, however, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. See id.; see also Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981). A district court should deny leave to amend on futility grounds if "it appears beyond doubt that the plaintiff's proposed amended complaint would not remedy the deficiencies in the previous complaint." Adam v. Hawaii, 235 F.3d 1160, 1164 (9th Cir. 2001), overruled on other grounds by Green v. City of Tucson, 255 F.3d 1086 (9th Cir. 2001) (en banc). Put differently, futility of amendment frequently means that it is not factually possible for plaintiff to amend the complaint so as to cure the deficiencies. Schmier v. United States Court of Appeals, 279 F.3d 817, 824 (9th Cir. 2002) (citations and quotations omitted).

In the instant case, Plaintiff requests leave to amend his access to the courts claim based on Defendant Dennis's actions of denying him access to the legal assistance program.

The Court's screening order lays out in detail the requirements for a First Amendment claim of denial to access to the courts:

> Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. See Lewis, 518 U.S. at 350-55. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. See id. at 354-55.
>
> In some instances, a law library or other program may not be sufficient for some of the prisoners because of their special situations (e.g., illiteracy or inability to communicate in English). See id. at 356. The right of access to the court is limited to the initiation of a court action. The state is not required to enable the prisoner to discover grievances or

6

> to litigate effectively once in court. See id. at 354. Nonetheless, prisoners may not be barred from receiving legal assistance from other prisoners unless they are provided with a reasonable alternative to such assistance. See Johnson v. Avery, 393 U.S. 483, 490 (1969); Storseth v. Spellman, 654 F.2d 1349, 1352 (9th Cir. 1981). The state may, however, reasonably regulate the time when, and the place where, prisoner legal assistance is dispensed. See Johnson, 393 U.S. at 490; see, e.g., Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984) (requiring that prisoners meet with jailhouse lawyer in law library), cert. denied, 469 U.S. 845 (1984); Corpus v. Estelle, 409 F. Supp. 1090 (S.D. Tex. 1975) (confining activities of jailhouse lawyers to specified writ room during set hours), aff'd, 551 F.2d 68 (5th Cir. 1977). But the restrictions must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Limitations may not be imposed arbitrarily or without reason. See Bradley v. Hall, 64 F.3d 1276, 1281-82 (9th Cir. 1995) (finding under Turner that prison "disrespect rule" as applied to prisoner was not reasonably related to legitimate penological interests and therefore impermissibly burdened his ability to file grievances).
>
> Once he identifies the inadequacy in a legal access program, the plaintiff must demonstrate that the alleged shortcomings in the program hindered his efforts to pursue a legal claim. See Lewis, 518 U.S. at 351.

(May 11, 2009 Order at 7-8.)

Plaintiff's motion for leave to amend is futile because it addresses his ability to fully discover his meritorious claims and not his right to initiate a court action. See Lewis, 518 U.S. at 354. In his motion for leave to amend, Plaintiff claims:

> Since the filing of the complaint, Plaintiff has discovered exactly what assistance inmate Vivero would have provided to prepare and present an 'adequate' petition . . . . [S]uch an 'adequate petition' would have had a critical effect on how the state habeas petition was decided by not only allowing Plaintiff to meet his time limitations, but most importantly, by allowing Plaintiff to present all his claims in the first place.[6]

(Mot. for Leave to File Am. Comp. at 1 (emphasis in original).)

Plaintiff alleges that with Inmate Vivero's assistance, Plaintiff's habeas petition would have included "several meritorious claims which if presented would have entitled Plaintiff to automatic withdrawl [sic] of his guilty plea." (Id. at 14.) In Inmate Vivero's declaration, attached to Plaintiff's motion for leave to amend, Inmate Vivero lists the additional claims that he "would have definitely included [in Plaintiff's petition] . . . ." (Vivero Decl. ¶ 11.) However, Defendant Dennis was not

---

[6] The Court notes that, as mentioned below, Defendant Dennis filed the motion for judgment on the pleadings on the grounds that the state court rejected Plaintiff's habeas claims on the merits and that therefore the untimeliness of his petition was not the cause of his alleged injury. Thus, Plaintiff's proposed amended complaint seems to address Defendant Dennis's argument by claiming that had Plaintiff been allowed to receive assistance from Inmate Vivero, Plaintiff would have been able to submit a petition that was both timely and meritorious. However, the Court finds below that such a claim is speculative, at best.

7

1  required to enable Plaintiff to discover all of his possible claims with the help of Inmate Vivero.

2  More importantly, Plaintiff does not have a constitutional right to Inmate Vivero's suggestions on

3  how the habeas petition could have been improved substantively. See <u>Lewis</u>, 518 U.S. at 354.

4        Accordingly, the Court denies Plaintiff's motion for leave to amend on futility grounds. <u>See</u>

5  <u>Adam</u>, 235 F.3d at 1164.

6  **II.     Plaintiff's Motion for Leave to File a Motion for Reconsideration**

7        Where a district court's ruling has not resulted in a final judgment or order, reconsideration

8  of the ruling may be sought under Rule 54(b) of the Federal Rules of Civil Procedure, which

9  provides that any order which does not terminate the action is subject to revision at any time before

10 the entry of judgment. See Fed. R. Civ. P. 54(b). "Reconsideration is appropriate if the district

11 court (1) is presented with newly discovered evidence, (2) committed clear error or the initial

12 decision was manifestly unjust, or (3) if there is an intervening change in controlling law." <u>School</u>

13 <u>Dist. No. 1J v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993).

14       In the Northern District of California, no motion for reconsideration may be brought without

15 leave of court. <u>See</u> Civil L.R. 7-9(a). Under Civil Local Rule 7-9, the moving party must

16 specifically show: (1) that at the time of the motion for leave, a material difference in fact or law

17 exists from that which was presented to the court before entry of the interlocutory order for which

18 the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for

19 reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the

20 emergence of new material facts or a change of law occurring after the time of such order; or (3) a

21 manifest failure by the court to consider material facts which were presented to the court before such

22 interlocutory order. <u>See</u> Civil L.R. 7-9(b). Unless otherwise ordered by the court, no response need

23 be filed to a motion under the Local Rule. <u>See</u> Civil L.R. 7-9(c).

24       Plaintiff challenges the Court's dismissal of Plaintiff's supervisory liability claim in his

25 amended complaint, arguing that the Court, in its Order Dismissing Supervisory Liability Claim

26 dated July 27, 2008, overlooked "material facts and controlling decisions . . . as to the allegations

27 that Defendant Kirkland implemented and enforced an unconstitutional legal assistance

28 policy/program with many deficiencies, in connection with Plaintiffs [sic] original denial of access

to the court claims . . . ." (Mot. for Leave to File Mot. for Recons. at 6.) The Court acknowledges that it interpreted Plaintiff's supervisory liability claim against Defendant Kirkland to deal exclusively with Plaintiff's lack of access to the legal assistance program after Defendant Dennis denied Plaintiff's request to receive legal assistance from Inmate Vivero. (July 27, 2009 Order at 3 n.1.) Interpreting Plaintiff's supervisory liability claim as such, the Court found that "such allegations are not related to his original denial of access to the courts claim. Therefore, such claims need to be raised in a new civil rights action." (Id.) However, in his motion for leave to file a motion for reconsideration, Plaintiff insists that his supervisory liability claim against Defendant Kirkland addressed policies that Defendant Kirkland implemented prior to, and which allegedly influenced, Defendant Dennis's denial of Plaintiff's request for legal assistance. (Mot. for Leave to File Mot. for Recons. at 4-5.) Upon careful review of Plaintiff's supervisory liability claim, the Court acknowledges that it misinterpreted the time-frame surrounding Plaintiff's claim against Defendant Kirkland.[7] The Court therefore erred in finding that Plaintiff's supervisory liability claim against Defendant Kirkland must be raised in a new civil action. Because Plaintiff has specifically shown a manifest failure by the Court to consider material facts which were previously presented, Plaintiff's motion for leave to file a motion for reconsideration is GRANTED. See Civil L.R. 7-9(b).

Accordingly, Plaintiff's request for the Court to reconsider its July 27, 2009 Order dismissing the supervisory claim against Defendant Kirkland is GRANTED; therefore, the Court VACATES the portion of its July 27, 2009 Order dismissing the supervisory claim against Defendant Kirkland.[8]

### III. Defendant Dennis's Motion for Judgment on the Pleadings

#### A. Standard of Review

A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the pleadings are closed, but within such time so as not to delay trial. Fed. R. Civ. P. 12(c). The

---

[7] The Court notes that whereas Plaintiff was granted leave to amend his supervisory liability claim against Defendant Horel, his amended complaint addresses primarily the actions of Defendant Kirkland. In Plaintiff's original complaint, his claims against Defendant Kirkland only arose in connection with the grievance process, which occurred after Defendant Dennis denied Plaintiff's request for legal assistance. Plaintiff's initial claim against Defendant Kirkland was dismissed with prejudice.

[8] While Defendant Kirkland has not been served in this action, the Court need not do so for reasons explained below.

9

standard applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b) motion to dismiss for failure to state a claim. Judgment on the pleadings is appropriate when, even if all material facts in the pleading are accepted as true, the moving party is entitled to judgment as a matter of law. Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990). However, a court need not automatically accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Although a court is generally confined to the allegations in the pleadings on a Rule 12(c) motion, a court may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions. See e.g., Fecht v. Price Co., 70 F.3d 1078, 1080 (9th Cir. 1995) ("Such consideration does not convert the motion to dismiss into a motion for summary judgment.").

In the instant case, while the Court is generally required to accept Plaintiff's allegations as true on a motion to dismiss, it need not do so here when Plaintiff's allegations are contradicted by his own exhibits and judicially noticeable matters. In Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), the Ninth Circuit stated that a court is not bound by "allegations that contradict matters properly subject to judicial notice or by exhibit." Id. Moreover, when an attached exhibit contradicts allegations in a complaint, the exhibit trumps the allegations. See, e.g., Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (stating that the exhibits trump contradictory allegations that are general and conclusory); Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). For these reasons, the Court will consider the exhibits attached to Plaintiff's complaint and the state-habeas records without converting Defendant Dennis's Rule 12(c) motion into a motion for summary judgment.

**B.     Analysis**

10

As outlined below, the Court finds that Plaintiff's allegations are insufficient to establish the injury and causation elements of his denial of access to the courts claim. See Christopher v. Harbury, 536 U.S. 403, 415 (2002) (discussing the elements for access-to-court claims); Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 785 (9th Cir. 2000) (discussing causation). Plaintiff suffered no actual injury because the state-habeas records show that he was not "shut out of court." Christopher, 536 U.S. at 415. Instead, the records show that the state court denied Plaintiff's petition on the merits. Thus, the state-habeas records are in contradiction with Plaintiff's claim of an actual injury. Second, Defendant Dennis's conduct did not proximately cause Plaintiff's injury, if any, because the cause-and-effect between the conduct and the purported injury is too tenuous to establish proximate causation as a matter of law.

### 1. Injury

Because Plaintiff raises a backward-looking claim of denial of access to the court (i.e., a lost opportunity to present a state habeas petition), he must show (1) the loss of a "nonfrivolous" or "arguable" habeas claim, (2) the conduct that frustrated the litigation, and (3) "a remedy that may be awarded as recompense, but [that is] not otherwise available in [a future] suit." Christopher, 536 U.S. at 415. The loss of an arguably meritorious claim goes to Plaintiff's standing to bring this case, which requires that he suffered an actual injury. Lewis, 518 U.S. at 349. The term injury means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348.

Here, Plaintiff suffered no actual injury because his state habeas claims were presented to the Del Norte County Superior Court in petition number HCPB06-5033, and the superior court rejected those claims on the merits. (Req. Judicial Notice, Ex. 1 at AGO 001, Ex. 2 at AGO 110-12; Compl. Ex. 31.) Plaintiff's March 6, 2006 habeas petition raised three claims to withdraw his guilty pleas on the weapons-related charges. (Req. Judicial Notice, Ex. 1 AGO 001, 007, 013, 062 (Abstract of Judgment for the weapons convictions).) First, Plaintiff alleged that his criminal defense counsel was constitutionally ineffective and the trial judge committed constitutional error when they did not advise him of immigration consequences before the guilty pleas. (Id. at AGO 007, 013.) Second,

11

1  Plaintiff argued that his defense counsel's alleged misrepresentations and inadequate investigation
2  undermined the validity of such pleas.  (Id.)  Third, Plaintiff sought to withdraw his guilty pleas
3  because no one advised him of his purported Article 36 rights under the Vienna Convention.  (Id.);
4  see Medellin v. Texas, 552 U.S. 491, 128 S. Ct. 1346, 1353 (2008) (stating that upon arrest of a
5  foreign national, the detainee has a right to contact his home country's consular post, and that the
6  arresting officer must inform the detainee of that right).

   The superior court rejected Plaintiff's habeas claims, finding that he was informed of the immigration consequences.  (Req. Judicial Notice, Ex. 1 at AGO 51:1-8, Ex. 2 at 111:15-19.)  Also, the superior court found that Plaintiff would likely be deported even without the weapons convictions because he had "already been convicted of numerous felonies for which he is serving prison terms, including at least six convictions for attempted murder."  (Id., Ex. 2 at AGO 111:10-14, Ex. 1 at AGO 106-07 (Abstract of Judgment).)  Plaintiff's own habeas exhibits demonstrate that the Justice Department had issued a deportation order against him based on the six attempted-murder convictions.  (Id., Ex. 1 at AGO 035 (Allegations 6-7).)  Notably, the deportation order made no mention of the weapons convictions as a basis for deportation.  (Id.)  Regardless, these weapons convictions would have been superfluous because the six attempted-murder convictions alone are clearly sufficient for deportation.  See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. 1101(a)(43)(F), (U) (aggravated felony includes attempted "crime of violence").  In fact, Plaintiff even asked for deportation to Mexico when he invoked the Foreign Prisoner Transfer Treaty, but prison officials denied that request because he had been living in the United States since the age of five.  (Compl. at 45, Ex. 14 at 3).)

   In response to Plaintiff's claim of ineffective assistance of counsel, the superior court found that he had not established ineffectiveness "in light of all the circumstances."  (Req. Judicial Notice Ex. 2 at AGO 111:23-24.)  Although Plaintiff claimed that his defense counsel promised to help him challenge the constitutionality of his attempted-murder convictions, the court was unable to find that such a promise could have rendered his counsel's performance ineffective in the weapons case.  (Id.,

Ex. 2 at AGO 111:24-28, 112:1-2, Ex. 1 at AGO 010-11 (detailing the alleged promise; contending that attempted-murder convictions were unconstitutional "according to [his] cellmate"), 062 (Abstract of Judgment for 03-5177).)  In any event, the court reviewed the letters that contained the purported promise and observed that "there was nothing to indicate that [the defense counsel] promised, for instance, to file appeals, petitions for habeas corpus, etc."  (Id., Ex. 2 at AGO 111:26-28, AGO 112:1; Ex. 1 at AGO 065, 067 (the letters at issue).)  The court also observed that Plaintiff's defense counsel petitioned the trial court for an investigator, that the investigator spent more than ten hours on the case, and that the investigator met with Plaintiff at PBSP on at least two occasions.  (Id., Ex. 2 at AGO 112:2-6.)  For these reasons, the superior court rejected Plaintiff's claim of ineffective assistance of counsel.

In response to Plaintiff's Article 36 claim, the superior court found no authority, nor did Plaintiff provide any, that required the overturning of his weapons convictions based on an alleged Article 36 violation.  (Id. at AGO 112:7-10; Ex. 1 at AGO 001-27 (providing no such authority in support of an Article 36 claim).)  Notably, the case law supports the superior court's conclusion, particularly when Plaintiff's weapons convictions were obtained by a negotiated plea.  (Id., Ex. 1 at AGO 002, 007, 009-10.)  In U.S. v. Reyes-Platero, 224 F.3d 1112, 1115 (9th Cir. 2000), overruled on other grounds by U.S. v. Jacobo Castillo, 496 F.3d 947, 951 (9th Cir. 2007) (en banc), the Ninth Circuit held that "an unconditional guilty plea cures any pre-plea treaty defects just as it cures any pre-plea constitutional defects."  In U.S. v. Gonzales, 339 F.3d 725, 729-30 (8th Cir. 2003), the Eighth Circuit reiterated its previous holding that a "failure to advise a criminal defendant of the right to consular contact did not constitute a jurisdictional defect; therefore, a knowing and voluntary guilty plea forecloses any claimed error based on a violation of the Vienna Convention."  In Sanchez-Llamas v. Or., 548 U.S. 331, 343 (2006), the Supreme Court stated that it would be "startling" to apply the exclusionary rule to statements obtained in violation of Article 36.  Just as a violation of Article 36 does not warrant exclusion of incriminating evidence, it also does not require vacating a criminal conviction for the same reason.  Thus, it was reasonable for the superior court to reject Plaintiff's Article 36 claim to set aside his weapons convictions.

13

Finally, and after concluding that there were "insufficient grounds" for habeas relief, the superior court observed that Plaintiff's habeas petition "appear[ed]" to be untimely. (Req. Judicial Notice, Ex. 2 at AGO 112:11-12.) The superior court stated: "It also appears that [Plaintiff's] claims were not timely made" because "[m]ost of the issues raised herein are issues that were raised at the time of sentencing and when he requested to withdraw his plea." (Id. at AGO 112:12-14.) The court further observed that there was "no indication why [Plaintiff] did not pursue an appeal," particularly when "[m]ost of the issues raised herein, but not ineffective assistance of counsel, were clearly appealable." (Id. at AGO 112:14-16.) When viewing the court's order denying Plaintiff's habeas petition in its entirety, it is clear that the court's recognition of the apparent untimeliness of the petition was merely a passing observation of Plaintiff's lack of diligence in pursuing habeas relief. (Id. at AGO 110-12.) Also, Plaintiff offered no explanation in his habeas petition why he waited over two years to seek habeas relief other than concluding that "any delays in filing his petition is due to extraordinary circumstances that were beyond his control by no fault of [Plaintiff]." (Id., Ex. 1 at AGO 007; Ex. 2 at AGO 111:3-4 ("Now, more than two years later, [Plaintiff] asks this Court, in habeas corpus proceedings, to allow him to withdraw his plea.").  In fact, Plaintiff's habeas petition never mentioned Defendant Dennis's December 17, 2004 denial of his request for inmate assistance as a reason constituting "extraordinary circumstances." (See id., Ex. 1.)

In sum, Defendant Dennis's conduct of denying Plaintiff access to the legal assistance program had no effect on the outcome of Plaintiff's habeas petition because the state court denied it on the merits, and not solely because it was untimely. Thus, Defendant Dennis's actions did not cause Plaintiff an actual injury.

**2.   Proximate Cause**

Assuming arguendo that Plaintiff suffered an actual injury, Plaintiff must also show that Defendant Dennis's conduct proximately caused that injury, and the touchstone of proximate cause in a § 1983 action is foreseeability. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 785 (9th Cir. 2000) ("It is well-established that foreseeability analysis is an appropriate part of proximate cause determinations in § 1983 actions.")

14

Here, the cause-and-effect between Defendant Dennis's December 17, 2004 conduct and the purported lost opportunity on April 24, 2006 (when Plaintiff's habeas petition was denied) is too tenuous to establish proximate causation as a matter of law.  Defendant Dennis could not have reasonably foreseen that the denial of Plaintiff's request for an additional ten hours of inmate assistance would have caused Plaintiff to sit on his habeas petition for almost fifteen months before he filed it on March 6, 2006.  (Compl. at 51, Ex. 20 at 3; Req. Judicial Notice, Ex. 1.)  Also, Plaintiff's habeas petition was not rejected simply because it was untimely.  Instead, as mentioned above, the state court accepted the petition, considered its merits, and rejected Plaintiff's arguments as meritless.  (Compl., Ex. 31; Req. Judicial Notice, Ex. 2.)  It was only after reaching the merits did the state court observe the apparent untimeliness of Plaintiff's petition, noting that Plaintiff alleged no facts justifying why he waited over two years to bring the petition.  (Req. Judicial Notice, Ex. 2 at AGO 111:3-4, 112:17-24; Ex. 1 at AGO 007 (concluding without any facts that any delay was because of "extraordinary circumstances . . . beyond his control").)

Even if Defendant Dennis had granted Plaintiff's request for inmate assistance, Plaintiff offers no plausible theory that the state court would have ruled differently.  As mentioned earlier, Plaintiff has since filed a motion for leave to amend his complaint to include allegations that Inmate Vivero would have helped him add meritorious claims to his state habeas petition.  (Mot. for Leave to File Am. Compl. at 14.)   However, it is speculative that Inmate Vivero would have been able to help Plaintiff draft meritorious claims or even that he would have spent those ten hours helping Plaintiff on the habeas petition at issue because, as evinced in Plaintiff's own request, Plaintiff supposedly needed inmate assistance for two unrelated habeas cases, a child-custody matter, and a civil-rights action.  (Compl.  50, Ex. 20 at 3).)  Further, Plaintiff does not allege any other specific action by Defendant Dennis that hindered his efforts to initiate the habeas petition after he was sentenced on January 22, 2004 on the weapons-related charges or between December 17, 2004 (when Defendant Dennis denied of Plaintiff's request for inmate assistance) and March 6, 2006 (when Plaintiff filed the habeas petition).

### 3.  **Defendant Dennis**

Based on the foregoing, Defendant Dennis is entitled to judgment as a matter of law because it is clear from Plaintiff's own complaint and exhibits and the state-habeas records that he suffered no actual injury.

The Del Norte County Superior Court did not shut Plaintiff out of court. Instead, the state court denied Plaintiff's petition on the merits. It is also clear from the same materials that the cause-and-effect between Defendant Dennis's one-time denial of Plaintiff's request for inmate assistance and Plaintiff's purported injury is too tenuous and speculative to establish proximate causation as a matter of law.

Accordingly, the Court GRANTS Defendant Dennis's motion for judgment on the pleadings.

### 4. **Defendant Kirkland**

As noted above, Defendant Kirkland has not been served and has not joined Defendant Dennis in his motion for judgment on the pleadings. It is apparent, however, that the claim against Defendant Kirkland is without merit and subject to judgment on the pleadings.

Judgment on the pleadings may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir.), cert. denied, 516 U.S. 864 (1995) (citing, inter alia, Silverton v. Department of the Treasury, 644 F.2d 1341, 1345 (9th Cir 1981)). Such is the case here. The allegations of supervisory liability against Defendant Kirkland in the complaint are related to the claim against his subordinate, Defendant Dennis. The Court has found above that Defendant Dennis is entitled to judgment as a matter of law. There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present motions, that the analysis differs with respect to Defendant Kirkland as opposed to Defendant Dennis. The Court has found that Plaintiff's constitutional rights were not violated based on Defendant Dennis's conduct of denying Plaintiff's request for inmate assistance; therefore, Plaintiff cannot prevail on his supervisory liability claim against Defendant Kirkland.

Accordingly, Defendant Kirkland is entitled to judgment as a matter of law.

16

# **CONCLUSION**

For the foregoing reasons,

1. The Court DENIES Plaintiff's Motion for Leave to File an Amended Complaint (docket no. 24).

2. The Court GRANTS Plaintiff's Motion for Leave to File a Motion for Reconsideration (docket no. 22). Plaintiff's request for the Court to reconsider its July 27, 2009 Order dismissing the supervisory claim against Defendant Kirkland is GRANTED; therefore, the Court VACATES the portion of its July 27, 2009 Order dismissing the supervisory claim against Defendant Kirkland.

3. The Court GRANTS Defendant Dennis's motion for judgment on the pleadings (docket no. 19). For the same reasons, Defendant Kirkland is also entitled to judgment as a matter of law.

4. The Clerk of the Court shall enter judgment in favor of Defendants Dennis and Kirkland, terminate all pending motions and close the file.

5. This Order terminates Docket nos. 19, 22 and 24.

IT IS SO ORDERED.

DATED: September 30, 2009

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.06\Alvarez5631.GrantJonPlead&penMOTS.wpd

1  UNITED STATES DISTRICT COURT
2  FOR THE
   NORTHERN DISTRICT OF CALIFORNIA

SERGIO ALVAREZ,

Case Number: CV06-05631 SBA

Plaintiff,

**CERTIFICATE OF SERVICE**

v.

ROBERT HOREL et al,

Defendant.

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 15, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sergio Alvarez K42605
P.O. Box 7500
Crescent City, CA 95532-7500

Dated: October 15, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Alvarez5631.GrantJonPlead&penMOTS.wpd    18